Curia, per
Nott, J.
This case presents a great variety of questions, both of law and fact, for our consideration.* I have heretofore taken occasion more than once to remark, that the province of this court does not extend to a minute examination of long and complicated accounts. These matters must be left to the commissioner, who, under the supervision of the chancellor, has more ample means of deliberate investigation than is allowed to this court. We can only lay down the rules by which cases ought to be governed, and leave the investigation of the facts where they can be better considered, and m all probability more correctly decided.
The case is brought upon exceptions to the report of the commissioner, and the decree of the chancellor upon them. It appears that upon a settlement with the executor, a certain sum was found to be in his hands, which he was decreed to pay over, with interest upon it. And the first inquiry is, whether he is entitled to commissions on the amount of interest so decreed to be paid. The act of 1789, prescribing the duties of executors, allows them two and a half per cent, on all moneys received, and the same on all moneys paid away in debts, legacies, &c. The same act makes it the duty of executors and administrators to render annual accounts of their administration to the ordinary. And it further provides, that if they neglect to do so, they shall receive no commissions for the management of the estate. The great security which minors have, for moneys in the hands of guardians and executors, is the annual examination and settlement of their accounts by the officer of whom that duty is required. Commissions are allowed only when the duty is performed; and the withholding of them in other cases was undoubtedly intended to ensure a faithful and punctual performance of their duties. It is the business of the court therefore to see that provision of the act rigidly enforced. If the executor in this case has fulfilled his duty, according to the requisitions of the act, he is entitled to the compensation which the law allows; that *is, two and a half per cent, on all the moneys which he shall finally pay over to the distributees : and although a part may consist of interest, he will be entitled to commissions on the aggregate amount. If the money had been placed out at interest, he would have been entitled to commissions upon paying it away : and whether he places it in the hands of others, or keeps it in his own, cannot be material to those to whom it is to be paid.
But it is to be contended that the executor is entitled to ten per cent, on the interest so paid over. When an executor lets out money upon interest and receives it in annually, and re-invests it again for the benefit of the estate, and makes it thus an accumulating fund until it is paid over, he is entitled to ten per cent, for his management: and when he suffers it to accumulate in his own hands in the same *450 way, he will be entitled to the same compensation ; but not when he is decreed to pay it over, at the close of his administration, on moneys retained by him.
The next question is, whether, when the return of the executor to the ordinary is the only evidence of the amount of moneys received by him, it shall also be received as evidence in his favor of the disbursements of the same. The only evidence which the parties interested in an estate can usually offer, of the amount to be administered, is the inventory returned by the executor: and being his own act, it must be conclusive against himself. And it is incumbent on him to show, by satisfactory evidence and vouchers, in what manner it has been administered. Those vouchers he ought to keep as his security ; and the ordinary ought not to allow his accounts, when the vouchers are not produced, nor their absence accounted for. And it ought to appear on the face of the settlement, what was the nature of the evidence on which the return was accepted and allowed. And although the evidence with the ordinary is not conclusive,* perse, in favor of an executor, it ought to be received for as much as it is worth ; and its value must depend upon a variety of circumstances : the regularity of the accounts, the death of witnesses, loss of vouchers, and the lapse of time, must all be taken into consideration.
In this case, sixteen years have elapsed since the account was settled and allowed by the ordinary. It is not to be presumed that he suffered it to pass, without satisfactory evidence that it was correct. I think, therefore, that it ought to have been allowed by the commissioner, Executors are not less liable to loss of papers, by lime and accident, than other persons. The settlement with the ordinary is intended as a security for the executor, as well as for the distributees; and, after a lapse of sixteen years, ought to be a complete protection. It will nevertheless be subject to impeachment by the other side. If the defendants’ case show' any error or fraud in the transaction, they are entitled to the benefit of it: but the burthen of proof must lie upon them.
The third exception is, that the commissioner has charged the executor with a certain sum due the estate by Reuben Ligón, when in fact it was due to Ligón by the estate. It appears, by the return of the executor himself, to be due to the estate; and, therefore, must be taken as evidence against him. He may be permitted to show that it was charged by mistake; but the proof must lie upon himself; and without such proof he must be bound by his return.
These observations embrace all the exceptions taken to the decree on the part of the complainant.
There are several exceptions on the part of the defendants which it is also necessary to consider.
The first exception is, that the executor ought to have been charged with the price of a negro sold for the payment of debts and also for his hire; when, as it *alleged, he had other funds in his hands at the time, and had no permission from the ordinary to make the sale. There is no doubt but that an executor ought not to sell the property of the estate for the payment of debts, when he has sufficient funds in his hands for that purpose; nor even when he has not, without the permission of the ordinary. But it does not appear *451 in this case that he had other funds; and in any event he is only liable for the value of the property with the interest upon it; and with that he is charged.
The second exception is, because the complainant ought to be charged with the property of the estate sold by Robert Ligón, &c.
By the will it appears that the widow was entitled to the possession of the whole estate, both real and personal, during her widowhood, for the support of herself and family. If she married, the executor was required to allow her what he thought would be sufficient for her support; and in other respects all the provisions of the will remained unaltered. The widow married Reuben Ligón, and it became a question of some difficulty to determine, in what manner the provisions of the will, that event having taken place, could be best carried into effect. The widow was entitled to a support out of the property, and the remainder was to be kept together for the maintenance and education of the children. The children could not be separated from their mother, and the executor was obliged probably to employ some person to superintend the plantation and negroes, and if he thought proper to make the husband his agent for that purpose, it appears to me it was perfectly within the scope of his duty. The husband died, leaving a crop on hand, and it appears that his administrator received and applied the proceeds of it to the benefit of his estate. It appears also that Ligón, in his lifetime, sold some small articles belonging to the estate *of Wright, and that he incurred some expenses for the plantation and for the support of the children, which the complainant allowed, and now makes a charge against the estate of his testator.
With regard to the crop, it unquestionably belonged to the estate of Wright, and ought not to have gone into the hands of the administrator of Ligón. Ligón had no right to receive the proceeds of the estate except for the support of the family, and being the agent of Wright, he must be liable for his acts. He ought not to have suffered the crop to have gone into the hands of Ligon’s administrator, and must, therefore, be liable for the amount, except what was necessary for the support of the widow and family. He will be equally liable for the property sold or otherwise disposed of by Ligón in his lifetime, and for moneys received by him belonging to the estate. This charge, however, will be subject to any disbursement made by him for the use of the estate or necessary advances for the family. But with regard to advances either by the husband or -wife, and debts contracted by them for the benefit of the estate, or the support and education of the children, it may be remarked, that an executor has no right to exceed the income of the estate, for any of those objects without leave of the court of equity. Where the income is found to be insufficient, it is his duty to apply to the court to make such further provision out of the estate as may appear necessary for that purpose. And any advances made without such authority must be at bis own risk and upon his own responsiblity. If, however, an executor does undertake to act without such permission, and upon examination it shall appear that there was a necessity for such an expenditure, and that the money has been prudently laid out, it will be allowed. But it is only on the ground of necessity that such an allowance ought to be *452 mac^e) *be existence of which it will be incumbent on *him to show, and of which it belongs to the chancellor to judge; if such necessity existed in this case then the charge was properly allowed.
The third exception relates to the allowance of commissions to the defendant, where regular annual returns of his administration have not been made. With regard to the general rule on that subject, I have nothing to add to the observations which have already been made. But I understand that the construction which has hitherto been given to the act by the court of equity is, that commissions ought to be allowed for those years in which the executor has rendered in an account of his administration, although he may have omitted some years. The correctness of that construction, however, is perhaps questionable. But as I have no doubt that it was adopted upon due consideration, and has been found convenient in practice, until it has now become a settled rule of the court, I am not disposed to innovate upon it. But it must be received with some qualifications. If an executor shall omit to settle his accounts for several years and then make a return for that whole period, he will only be entitled to commissions for the year in which his account is rendered; and the allowance must not be made to embrace those years in which no returns have been made. And unless his accounts are so made out that the transactions of each year may be distinctly ascertained, no commissions ought to be allowed.
The fourth exception has been considered in the observations which I have already made. With regard to the fifth, I have nothing to add to the views taken by the chancellor.
The question of compound interest made in the sixth exception does not appear to have received that consideration in this State to which it is entitled. It would seem, from the early chancery cases, that an executor was not held liable even for simple interest on mon-eys in his *hands, in any cases whatever. In the case of Lynch v. Cappy, 2 Cha. Ca. 35, an executor was held not liable
for interest on the testator’s estate, although he had made interest of it. And in the case of Adams v. Gale, 2 Atk. 106, Lord Hardwicke recognizes the right of an executor to let out money on his own account, without being liable for the payment of interest. The case of Ratcliffe v. Greaves et al. 1 Vern. 196, is the first which I have found where interest was allowed in the English courts. But there the executor had employed a part of the money in trade, in which he had made a profit, and on a part he had received interest; and it was in those special circumstances that the interest was allowed. But it was not attempted to obtain more than simple interest, and even that it was said, was contrary to the practice for twenty years; and that there were more than forty precedents against it. So when money is out at interest, and unnecessarily called m by the executor, it was held that he should pay interest. Taylor v. Gerst, Mosely, 99. So in the case of Newton v. Bennet, 1 Bro. Cha. Ca. 361, Lord Thurlow held, that where an executor had employed the funds of the estate in trade, he should pay interest on it; but even then his lordship said, he would not say that he was bound to pay interest on the ground of having called in a debt which bore interest. In the case of Darrel v. Eden *453 and wife, 3 Desaus. Rep. 241, Chancellor DeSaussure mentions the case of Stork v. Blake, where the court refused to decree interest against an executor. Of late years, however, a more reasonable and correct rule has prevailed; interest is required of an executor in most cases where money has been unnecessarily retained, or for an unreasonable time. But the allowance of compound interest seems to be an invention of modern date. The first case, and indeed the only case where I can find that it has been allowed in this State, is the case of Bowles and wife v. *Drayton, 1 Desaus. Rep. 489. But in that case the testator had bequeathed a certain sum to his daughter, and directed the interest to be annually applied for maintenance and education. There the court required interest to be paid on the interest; because by the express provisions of the will the interest was required to be paid annually for her benefit. But in the case of Darrel v. Eden and wife, 3 Desaus. Rep. 243, where the master had calculated compound interest, Chancellor DeSaussure seemed to think it a doubtful question whether any interest should be allowed : upon consulting the master, however, and finding that such had been the practice of the court for some time past, he suffered it to pass. But he reversed the master’s report, which allowed semi-annual rests, and directed the interest account to be kept in a separate column, so that compound interest should not be allowed. And, in the case now under consideration, the same learned chancellor says the rule in this State is against allowing rests and compound interest. And in the case of Meyers v. Meyers, (post) Chancellor Thompson says, he never did allow it, and never will, under any circumstances. We are, therefore, certainly not authorized bv precedent to lay it down as a general rule in this State, that interest shall be calculated with annual rests on moneys in the hands of executors. I differ, however, with ¡chancellor Thompson in opinion, that it ought not to be allowed in any case.
There are cases where common justice requires it: and where great injustice would otherwise be done. And the only difficulty is in drawing with precision the line of distinction between those cases to which the rule shall or shall not be applied. In the case of Raphael v. Boehm, 11 Ves. 92, which veas decided in 1805, Lord Eldon speaks of it as a question of great difficulty, and refused to decide it until he had consulted several masters* on the subject. His lordship ultimately allowed it; but it was upon the ground that the tes- L " tator had expressly directed the money so to be placed out as that the interest should accumulate, and that the executor had kept it against the express directions of the will. But he says, “it has been the habit of the court to give it.”
The same case afterwards came before Lord Chancellor Erskine, on a re-hearing, who affirmed the decree, remarking that “the duty of the executor did not depend upon the general rule, as it relates generally to administration of assets, but upon the special rule required by this particular will.” 12 Ves. 411. The same rule is laid down in Schieffelin v. Stewart, 1 Johns. Cha. Rep. 626. And I have understood that in a late case of Edmunds v. M’Morris, in the court of equity of this State, Harper’s Eq. Rep. 224, where the executors neglected to vest the proceeds of the estate in stock, to accumulate for the benefit of the distributees, according to the directions of the will, it was decreed that interest should be calculated with annual rests.
*454 I take it, therefore, that there is no such general rule as that an executor shall be required to pay compound interest on the balances which may be found in his hands. And even if we had found such a rule more prevalent in England, where money may always be promptly vested in stock, or some other productive fund, yet it would be impracticable in this State, where people are not in the habit of dealing in stock, and indeed where it is only rarely to be purchased. Debts due estates are generally collected in slowly, and in small sums. Moneys cannot always be let out promptly, much less safely, at interest: and simple interest is usually more than can be realized with the utmost diligence.
The exceptions to the rule, some of which I have noticed, seem to where the will itself directs money to *be laid out, in a particular way, as an accumulating fund; or where the executor unnecessarily calls in money which is out at interest and accumulating, or employs it in trade, or in some other manner, and refuses or neglects to account for the property. In these, and such like cases, it is right and proper that annual rests should be made. The cases are numerous, and the principle too familiar to require authority that a trustee shall not make a profit to himself by the trust estate. All moneys received, laid out, or employed in any manner, or property purchased with the funds of the estate, shall enure to the benefit of the cestui que trust. But all these cases come within the principle of those which I have been considering; and must be determined by the same rules. They may sometimes seem to operate harshly, but then it is the fault of the party himself upon whom the hardship falls, because he may always avoid the difficulty by keeping regular accounts. And a person has no right to complain who suffers in consequence of his own neglect. There do not appear to be any circumstances connected with the transactions of this executor to render him an exception to the general rule. I am therefore satisfied with the opinion of the chancellor on this point.
As to the sixth exception, the rule which the commissioner has adopted for the calculation of interest is certainly an erroneous one; though I believe it is the method usually adopted by the commissioners throughout the State : and I believe we have suffered some cases to pass where the accounts have been made up in that way without requiring them to be corrected. The rule for calculating interest, which has always prevailed in this Slate until a contrary practice has somehow found its way into the court of equity, will be found in the case of John Black et al. v. John Blakely and wife, ante, p. 1, which was decided by the court at its last sitting. The *rule has universally prevailed in the courts of Jaw, and I cannot conceive upon what principle a different practice has been allowed in the court of equity. Certainly no good reason can be given why different rules should prevail in the two courts. This exception must therefore be allowed ; and the interest must be calculated according to the rule laid down in the case aboved alluded to.(a)
*455 The complainant was certainly entitled to credit for the amount of the receipts which are the subject of the seventh conception. The defendants nevertheless ought to have been permitted to show that a mistake had been made in the calculation, and to have it corrected if any such could be made to appear.
I do not perceive that the witness whose testimony was rejected had any such interest in the question as to render him incompetent. One defendant may be a witness for or against another in equity, where his interest is not to be affected by his testimony. I am of opinion, therefore, that the testimony ought to have been received.
*1 have now gone through with the exceptions on both sides, and expressed my opinion of the principles on which they ought to be decided, without giving any opinion as to the decree of the chancellor, which has been pronounced upon them. The commissioner acknowledges that he made up his report in such haste, that he had not time to state the evidence and the reasons on which his opinion was founded. The chancellor also acknowledges that he was not sufficiently informed to enable him to decide with satisfaction to himself. I think the commissioner did wrong to make a report until he had time to do it in such a manner as to enable the chancellor to decide, understandingly, the several questions submitted to his consideration. And I think the chancellor would have done better to have sent the case back to tile commissioner, with directions to give such further exposition of the facts as would enable him to decide with more satisfaction to himself. For it is very apparent that the case has been presented to this court in such a way as to give us a very imperfect view of its merits.
The case must therefore go back to the commissioner, in order that the accounts may be settled according to the principles above laid down, and it is ordered accordingly.

Case sent back to the commissioner.

 The English rule is this, where the executor comes before the master on a reference of accounts: u In taking an account of a testator’s personal estate, come to the hands of his executors, the decree directs that in taking the accounts the master shall distinguish what is principal and what is interest thereof; if the executors should not *455 have made such a distinction in their accounts, it must be calculated and ascertained in the charge; and the principal and interest must be distinguished and ascertained. All moneys which became due in the lifetime of the testator, and which remained owing to him at his death, although part thereof might have been interest on his mortgages or other securities, must be considered as principal money; the interest to be ascertained pursuant to the decree, being such only as hath accrued due on the mortgages and other securities, and on the testator’s personal estate, put out to interest by his executors since his death. 2 Fowler’s Proceedings in Equity, 280. In the same work, which contains the exchequer practice on the equity side, there is a full account of the manner in which receivers are to keep their accounts and make their annual report to the master. 2 Fowler, 379.